UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

          v.                                       Case No. 07-CR-200

DEMETRIUS S. PARTEE,

          Defendant.

## RECOMMENDATION ON THE DEFENDANT'S MOTION TO SUPPRESS

On July 24, 2007, the grand jury returned a one count indictment alleging the Demetrius S. Partee ("Partee") possessed seven rounds of ammunition after having been previously been convicted of a felony, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e)(1). The indictment also alleged the Partee qualifies as an Armed Career Criminal as defined in Title 18, United States Code, Section 924(e)(2).

On September 11, 2007, Partee filed a motion to suppress the physical evidence recovered from his person. The government agreed that an evidentiary hearing was necessary to resolve the defendant's motion and an evidentiary hearing was conducted on September 26, 2007. A summary of the evidence adduced at the evidentiary hearing is set forth below. Following the hearing, the court ordered the parties to submit any particularly relevant case citations no later than October 5, 2007. The pleadings on the defendant's motion are closed and the matter is ready for resolution. The voir dire deadline in this case is November 8, 2007 and a jury trial is scheduled to commence on November 13, 2007 before the Chief Judge Rudolph T. Randa.

**EVIDENTIARY HEARING SUMMARY**

The court received the testimony of only a single witness, Milwaukee Police Officer Jeffrey Krueger ("Krueger"). Officer Krueger graduated from the Milwaukee Police Academy in November of 2006 and in May of 2007 was assigned the Neighborhood Safety Initiative ("NSI"). The NSI is a program where officers are assigned to a particular neighbor identified through crime statistics as being a high crime neighborhood in that it has a high number of homicides, shootings, calls for shots fired, or complaints of drug offenses.

On May 31, 2007, as part of the NSI, Krueger and his partner were assigned to a foot patrol in the area of North 26th Street and West Hadley Street. At approximately 9:30 P.M., Krueger observed a car traveling southbound on 26th Street without its headlights. Due to the fact that it was dark, operating a vehicle without headlights was a traffic violation. Officer Krueger shined his flashlight towards the vehicle and flashed it on and off in an effort to signal the driver. The driver stopped in the middle of the street rather than pulling over to the side and Krueger approached the driver's side of the vehicle.

Upon making contact with the driver, who Krueger later identified as Partee, Krueger asked Partee if he had a driver's license. Partee replied that he did not and, in accordance with Krueger's standard practice for when drivers do not have driver's licenses, Krueger instructed Partee to exit the vehicle. Prior to Partee exiting the vehicle, Krueger observed that Partee appeared nervous in that he was speaking very quickly and he appeared to be fidgeting with his right pant leg as if he was adjusting or trying to conceal something. Particularly in light of the fact that this encounter was occurring in a high crime area, Partee's actions caused Krueger to be concerned for his and his partner's safety. The entire span of time between the initial stop and Partee exiting the vehicle was approximately thirty seconds.

At the curb, Krueger had Partee extend his arms and Krueger conducted a pat down search. Krueger felt a hard object in Partee's right front pants pocket that he could immediately recognize was not an object such as keys, a cell phone, or a wallet. Upon contacting this hard object and recognizing that it was not an object such as a wallet, Krueger grabbed the object but did not engage in any other manipulation of the object prior to removing it from Partee's pocket. Krueger did not ask Partee what the object was. Officer Krueger believed this object may have been a smaller handgun or a switchblade knife, so he retrieved it from Partee's pocket. However, Krueger acknowledged that this could have been any number of things other than a weapon. This object, received by the court as Exhibit 2 and subsequently withdrawn for safekeeping by the government following the hearing, was a 9mm magazine, wrapped in black tape and containing numerous rounds of ammunition.

Upon recovering and recognizing this object for what it was, Krueger placed Partee in handcuffs. Officer Krueger testified that he did this out of concern for his safety because he believed that Partee may be in possession of a gun along with the magazine and because he was not patrolling in a squad car where he could secure Partee, it was necessary to handcuff Partee to continue the investigation. Upon securing Partee, Krueger checked to see if Partee had any warrants and in doing so learned that although Partee did not have any open warrants, Partee was a convicted felon, was on probation, and his driver's license had been revoked. Ordinarily, if a driver's only infraction was operating a vehicle after license revocation, Krueger would issue the driver a citation without arresting him.

**ANALYSIS**

Operating a vehicle without headlights during the hours of darkness is a violation of state law, Wis. Stat. §§ 347.06(1), 347.09, 347.30, and therefore probable cause existed for Officer Krueger to stop Partee's vehicle. See Whren v. United States, 517 U.S. 806, 810 (1996). Upon

3

stopping Partee, Krueger learned that Partee did not have a driver's license. It is unclear whether Partee stated that he did not have a valid license, or if he simply did not have it with him. However, the distinction is insignificant because either is a violation of Wisconsin law. Wis. Stat. § 343.18. Officer Krueger then ordered Partee to get out of the car and escorted him to the sidewalk. "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977). Officer Krueger testified that it is standard practice in the Milwaukee Police Department to ask any person stopped for a traffic violation who does not have a driver's license to get out of the vehicle.

"Although the confrontation between a police officer and a citizen stopped for a traffic violation can be fraught with danger, this fact alone does not justify a pat-down, and the caselaw does not support the view that an officer may frisk the occupants of any car stopped for a traffic violation." United States v. Brown, 188 F.3d 860 (7th Cir. 1999) (internal citations and quotation omitted). Rather, before a police officer may conduct a limited, non-invasive pat-down search of the individual stopped for a traffic violation, the police officer must have an objectively reasonable belief that he is dealing with a potentially armed and dangerous individual. United States v. Rivers, 121 F.3d 1043 (7th Cir. 1997) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)); United States v. Maher, 145 F.3d 907 (7th Cir. 1998) (citing United States v. Tilmon, 19 F.3d 1221, 1224 (7th Cir. 1994)); United States v. Fryer, 974 F.2d 813, 819 (7th Cir. 1992).

Officer Krueger testified that it is his practice to always conduct a pat down of a person he asks to get out of a vehicle following a traffic stop. This is his practice in any area of the city. Krueger's practice of conducting searches, regardless of specific unique articulable facts that would cause a reasonable police officer to believe that a person may be armed, is clearly not permitted under the Fourth Amendment. However, the testimony at the hearing makes clear that it was not

4

pursuant to this standard practice that Officer Krueger patted down Partee, but rather the pat down of Partee was motivated by specific unique factors.

Officer Krueger testified that three specific factors made him suspicious of Partee. First, Partee was stopped in a neighborhood that was being targeted by the police because it was identified as a high crime neighborhood. Second, Krueger testified that Partee appeared more nervous than an ordinary person would be when stopped by the police in that he was speaking very fast. Finally, Krueger testified that Partee made suspicious movements while still in the car that caused Krueger to become concerned that Partee may be concealing contraband or attempting to obtain a weapon.

As for the fact that Partee was stopped in a neighborhood identified as being a high crime area, this fact alone is insufficient for a police officer to conclude that the defendant was engaged in criminal conduct. However, "courts may consider the defendant's presence in a high crime area as part of the totality of circumstances confronting the officer at the time of the stop. The police do not have carte blanche to pat down anyone in a dangerous neighborhood . . . ." Brown, 188 F.3d at 865 (internal citations and quotations omitted).

Second, courts have repeatedly found a suspect's nervousness to be a relevant factor when considering whether a pat down was reasonable. See, e.g., United States v. Adamson, 441 F.3d 513, 520 (7th Cir. 2006); United States v. Hendricks, 319 F.3d 993, 1003 (7th Cir. 2003); Brown, 188 F.3d at 865; United States v. Maher, 145 F.3d 907, 909 (7th Cir. 1998).

Finally, courts have similarly repeatedly found that a suspect's suspicious hand movements may be a relevant factor when considering whether a pat down was reasonable. See, e.g., United States v. Hamlin, 319 F.3d 666, 671-72 (4th Cir. 2003); United States v. Brown, 273 F.3d 747, 748-49 (7th Cir. 2001); United States v. Robinson, 119 F.3d 663, 667 (8th Cir. 1997); United States v. Michelletti, 13 F.3d 838, 842 (5th Cir. 1994); United States v. Mitchell, 951 F.2d 1291, 1296 (D.C.

5

Cir. 1991); United States v. Lane, 909 F.2d 895, 900 (6th Cir. 1990); United States v. Mattes, 687 F.2d 1039, 1042 (7th Cir. 1982).

Based upon the totality of the circumstances, the court finds that Officer Krueger's concern that Partee may be armed and posed a threat either to Krueger or others was objectively reasonable. Therefore, Krueger was entitled to conduct a limited pat down search for weapons. Upon conducting this pat down, Krueger detected a hard object in Partee's right front pocket. Krueger was unsure if this hard object was a weapon and therefore he grabbed the object in an effort to better determine what it was.

Officer Krueger's grabbing the unknown hard object is distinguishable from the police officer's manipulation of an unknown object in a suspect's pocket during a pat down that the Supreme Court discussed in Minnesota v. Dickerson, 508 U.S. 366 (1993). In Dickerson, the officer immediately recognized that lump in the suspect's pocket was not a weapon. Id. at 377-78. The officer then further manipulated the object to be able to identify the unknown object as crack cocaine. Id. In the present case, Krueger was not able to rule out the possibility that the unknown hard object was a weapon; rather, it was precisely because he thought the object may be a weapon that he grabbed the object in an effort to better determine what it was. Because Krueger's subsequent actions were based upon the reasonable belief that the object in Partee's pocket may be a weapon, the court finds that the grabbing of the object was reasonable under the Fourth Amendment.

Officer Kruger then removed the object from Partee's pocket. Officer Krueger testified that before he removed the object from Partee's pocket, he was unsure what the object was. He believed that the object may have been some sort of knife or perhaps a smaller handgun.

A police officer's suspicion that an object detected during a pat down search may be a weapon need not be correct for the search to be proper under the Fourth Amendment. In Brown, the

6

Seventh Circuit upheld the denial of the defendant's motion to suppress when a police officer recovered a hard object from the defendant's waistband that he thought might be the butt of a gun but turned out to be a package of crack cocaine. 188 F.3d at 866. Under the circumstances, the court found it was reasonable for the officer to suspect the object might have been a gun and acknowledged, "Better safe than sorry." Id.

From a review of the decisions from other Circuit Courts of Appeals that have addressed the question of what level of certainty a police officer must possess before removing an unknown object that is detected during a pat down search, it is clear to this court that the appropriate standard is one of reasonableness. See, e.g., United States v. Clay, 483 F.3d 739 (11th Cir. 2007) (holding it was reasonable for a police officer to remove an object he thought may have been a screwdriver but turned out to be drug paraphernalia); United States v. Hanlon, 401 F.3d 926, 930 (8th Cir. 2005) (holding it was reasonable for a police officer to remove an object he thought may have been a pocket knife or small weapon but turned out to be a vial of methamphetamine); United States v. Holmes, 385 F.3d 786 (D.C. Cir. 2004) (holding it was reasonable for a police officer to remove an unknown rectangular object that turned out to be a scale because a reasonable police officer may have thought the unknown object could have been a weapon); United States v. Majors, 328 F.3d 791 (5th Cir. 2003) (holding a police officer was permitted to continue a search because he could not rule out that the bulge in the defendant's pocket contained a weapon); United States v. Harris, 313 F.3d 1228, 1238 (10th Cir. 2002) (holding "so long as [the officer] had a reasonable belief that the object he felt might be a gun, he continued to have a right under Terry to reach into Defendant's boot to investigate further" and thus removal of a Saran Wrap package that was revealed to contain crack cocaine was reasonable); United States v. Swann, 149 F.3d 271, 276-77 (4th Cir. 1998) (holding it was reasonable for a police officer to remove a hard rectangular object that was roughly the same size and shape as a box cutter but turned out to be a bundle of credit cards). Thus, "so long

as an officer is investigating an object that reasonably may be a weapon, the Terry search may continue." Majors, 328 F.3d at 795 (quoting United States v. Maldonado, 42 F.3d 906, 909 (5th Cir. 1995); citing United States v. Campbell, 178 F.3d 345, 349 (5th Cir. 1999)).

Turning to the facts of this case, it is clear to this court that Krueger's belief that the unknown object detected in Partee's pocket may have been a weapon was reasonable. There are many weapons or objects that may be used as weapons that are roughly the size and shape of a magazine for a 9mm handgun. For example, Krueger testified that he thought the object was consistent with a switchblade. However, there are, of course, countless benign objects that are of a similar size and shape. Simply because the object turned out to be only a part of a weapon rather than an independently functional weapon does not render the search impermissible under the Fourth Amendment. Provided the belief that the object may be a weapon is objectively reasonable, as the court observed in Brown, it certainly is better for an officer to be safe than sorry. Brown, 188 F.3d at 866. Requiring an officer to risk his life for want of the ability to instantaneously identify an object through touch alone would run contrary to the intent of Terry. See United States v. Stewart, 388 F.3d 1079, 1085 (7th Cir. 2004).

Upon recovering the loaded magazine, Krueger handcuffed Partee. At this time, Partee was in custody as a result of the traffic stop that was supported by probable cause. See United States v. Garcia, 376 F.3d 648, 650 (7th Cir. 2004). In light of the fact that Partee did not have a driver's license with him, it was necessary for the officers to continue to detain Partee as they verified Partee's identity and the status of his driver's license. Further, additional detention was necessary to permit the officers time to issue any necessary citations.

Officer Krueger testified that he handcuffed Partee during this subsequent detention because he was concerned that Partee may have a firearm in light of the fact that he recovered a loaded

8
Case 2:07-cr-00200-LA   Filed 10/11/07   Page 8 of 10   Document 17

magazine. Further, Krueger testified that he handcuffed Partee because he did not have a squad car where he could safely secure Partee.

A greater degree of intrusions are ordinarily permitted when a person is stopped for a traffic stop as opposed to a Terry stop because a traditional traffic stop is supported by probable cause whereas a Terry stop is supported by only reasonable suspicion. United States v. Childs, 277 F.3d 947, 953 (7th Cir. 2002) (en banc). Because courts have repeatedly held that the use of handcuffs is appropriate when police officers conduct Terry stops, see United States v. Askew, 403 F.3d 496, 507 (7th Cir. 2005) (quoting United States v. Tilmon, 19 F.3d 1221, 1224-25 (7th Cir. 1994)); see also, United States v. Wilson, 2 F.3d 226, 232 (7th Cir. 1993); United States v. Glenna, 878 F.2d 967, 972 (7th Cir. 1989), handcuffs certainly would be no less appropriate when a driver is stopped based upon probable cause to believe he committed a traffic violation. Whether or not the use of handcuffs is appropriate depends upon whether such action is reasonable under the circumstances. See Garcia, 376 F.3d at 650. Under the circumstances presented, the court concludes that the use of handcuffs was reasonable under the Fourth Amendment. Upon recovering a loaded magazine, a reasonable officer would be concerned that a suspect possessed a firearm or otherwise posed a threat to the officers. Further, because Krueger did not have a squad car wherein he could secure Partee as he continued his investigation, the use of handcuffs was reasonable.

During this subsequent detention and as part of a routine check to see if Partee was wanted on any warrants, Krueger learned that Partee was a convicted felon. Therefore, at this point probable cause existed to arrest Partee for the crime of possessing ammunition after having been convicted of a felony. See 18 U.S.C. § 922(g)(1). Further, Krueger learned that Partee's driver's license was revoked and therefore probable cause existed to arrest Partee for the criminal offense of operating while revoked. See Wis. Stat. § 343.44(1)(b), (2)(b).

9

**CONCLUSION**

There was probable cause to stop Partee's vehicle and based upon the totality of the circumstances, it was reasonable for Krueger to conduct a pat down search of Partee. Upon detecting an unknown object that Krueger reasonably suspected may be a weapon, it was reasonable for Krueger to remove this object from Partee's pocket. Given the nature of this object and the other circumstances present, it was reasonable for the officers to detain Partee with the use of handcuffs. During the subsequent reasonable detention and pursuant to a routine check to see if Partee was wanted on any warrants, Krueger learned that Partee was a convicted felon, and therefore probable cause existed to arrest Partee for the criminal offense that he is charged with in the indictment. Thus, the court finds that Officer Krueger's actions were consistent with the Fourth Amendment and therefore shall recommend that Partee's motion to suppress be denied.

**IT IS THEREFORE RECOMMENDED** that the defendant's motion to suppress be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this <u>10th</u> day of October, 2007.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge